# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# STATESVILLE DIVISION
# CIVIL CASE NO. 5:12CV105-RLV

| | |
|---|---|
| KAMRON REZAPOUR and TINA REZAPOUR, | )<br>)<br>) |
| Plaintiffs, | )<br>) |
| v. | )     MEMORANDUM and ORDER<br>) |
| EARTHLOG EQUITY GROUP, INC., and ROBERT E. ARMS | )<br>)<br>) |
| Defendants. | )<br>) |

**THIS MATTER** is before the Court upon Defendants' Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), as well as all related memoranda submitted by Defendants in support and submitted by Plaintiff in opposition. (Docs. 6-9, 11-14).

## I. PROCEDURAL AND FACTUAL BACKGROUND

Plaintiffs filed this action against Robert E. Arms ("Arms") and Earthlog Equity Group, Inc. ("Earthlog") in North Carolina Superior Court in Watauga County. The Plaintiffs obtained a default judgment against Earthlog in the sum of $201, 910.00 before Defendants removed the action to this Court. The default judgment against Earthlog was entered on July 17, 2012. Defendants have moved to set aside the default judgment, but for purposes of this order both defendants will be included as moving parties.

Plaintiffs, Kamron and Tina Rezapour ("the Rezapours"), are husband and wife, and are citizens of Florida. (Doc. 6, Pls.' Am. Compl., ¶ 1). Arms is a citizen and is domiciled in Tennessee. (Pls.' Am. Compl., ¶ 2). Arms is the Chairman, CEO, and sole shareholder of Earthlog, a Tennessee corporation. (Pls.' Am. Compl., ¶ 2).

The Rezapours own real property located in Ashe County, North Carolina ("the property"). The allegations arise out of an agreement between Plaintiffs and Arms for Arms to construct an earth shelter home and bomb shelter on the property. Arms informed Plaintiffs that he would require a down payment of 30% of the construction price, a $5, 000.00 upfront consulting fee, and a $16, 990.00 upfront fee for blue prints. (Pls.' Am. Compl., ¶ 6). Exhibit A represents the quote Plaintiffs received from Arms. (Pls.' Am. Compl., Ex. A). Plaintiffs claim that Arms told them if they paid him $200, 000.00 upfront, he would move their project to "the front of the line." (Pls.' Am. Compl., ¶ 7). On January 5, 2012, Plaintiffs entered into a contract ("the contract") with Arms for the construction of an earth shelter home and bomb shelter on the property.[1] (Pls.' Am. Compl., ¶ 8). Exhibit B represents a correct, but unexecuted copy of the contract. (Pls.' Am. Compl., Ex. B). Under the contract, Plaintiffs agreed to pay Arms $364, 279.75 for the project. (Pls.' Am. Compl., ¶ 10). Plaintiffs paid $5, 000.00 to Arms for consulting services prior to the execution of the contract, and they paid a $200, 000.00 down payment. (Pls.' Am. Compl., ¶ 11). Plaintiffs also paid $1, 910.00 for replacement filters, which they never received. (Pls.' Am. Compl., ¶ 11). On January 11, 2012, Earthlog became incorporated. (Pls.' Am. Compl., ¶ 9).

About February 2012, Arms provided Plaintiffs with proposed floor plans, which Plaintiffs recognized needed to be reversed, and Arms told them reversal would not be a problem. (Pls.' Am. Compl., ¶ 12). In March 2012, Arms told Plaintiffs to send him $12, 000.00 to cover the addition of an escape hatch to the plans. (Pls.' Am. Compl., ¶ 13). Plaintiffs told Arms their deposit was more than enough to cover the addition, but Arms responded that was not acceptable and that he was going to increase the price of the escape hatch to $15, 000.00, and

---

[1] The written contract is ambiguous as to the exact nature of the party or parties contracting with Plaintiffs. For purposes of this order the counterparty or parties to Plaintiffs will be referred to as "Arms."

delay construction until he was wired the money. (Pls.' Am. Compl., ¶ 13). Around late March 2012, Plaintiffs asked Arms when they would receive the blue prints, and Arms responded an additional $16, 053.97 was needed for the new blue prints because they were inconsistent with the Plaintiffs' instructions. (Pls.' Am. Compl., ¶ 15). Plaintiffs objected to paying for the new blue prints and asked to see a copy of the original blue prints, but Arms responded he would not talk to Plaintiffs until they paid for the new prints. (Pls.' Am. Compl., ¶ 16). In April 2012, Arms informed Plaintiffs that God told him to embark on a project, and asked Plaintiffs to wire him $12, 000.00 to fund this project. (Pls.' Am. Compl., ¶ 14). Plaintiffs orally terminated the contract and requested their $201, 910.00 deposit. Arms refused to return it. (Pls.' Am. Compl., ¶ 17).

Plaintiffs are pursuing damages against Arms in the amount of $201, 910.00 for breach of contract, breach of the covenant of good faith and fair dealing, and unfair and deceptive practices. In the alternative, Plaintiffs are seeking damages for $201, 910.00 for unjust enrichment. Plaintiffs are also seeking treble damages pursuant to N.C. Gen. Stat. § 75-16, and the costs of the action, including reasonable attorneys' fees, pursuant to N.C. Gen. Stat. § 75-16.1. Plaintiffs also seek to pierce the corporate veil of Earthlog as a corporation to the extent the corporate structure would otherwise shield the assets of Arms as an individual from liability.

On September 4, 2012, Defendants filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). (Doc. 7, Def.'s Mot. to Dismiss). On September 17, 2012, Defendants entered a Motion to Set Aside Default Judgment and Entry of Default. (Doc. 8, Def.'s Mot. to Set Aside Default J.). Plaintiffs timely responded to both motions. (Doc. 11 & 13).

## II. STANDARD OF REVIEW

Defendants here move to dismiss Plaintiff's Complaint pursuant to rule 12(b)(6) of the Federal Rules of Civil Procedure. A Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted challenges the legal sufficiency of a plaintiff's complaint. *Francis v. Giacomelli*, 588 F.3d 186, 192 (4th Cir. 2009). Under this standard, "the court should accept as true all well-pleaded allegations and should view the complaint in light most favorable to the plaintiff." *Marx Indus., Inc. v. Baseline Licensing Group, LLC*, 2011 U.S. Dist. LEXIS 81752, at *3 (W.D.N.C. July 26, 2011) (Voorhees, J.) (quoting *Mylan Labs, Inc. v. Matakari*, 7 F.3d 1130, 1334 (4th Cir. 1993)). In order to survive a Rule 12(b)(6) motion to dismiss, the facts alleged must be sufficient "to raise a right to relief above the speculative level" and "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). Requiring plausibility "does not impose a probability requirement at the pleading stage." *Id.* at 556. It does, however, demand more than a "sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 662. Ultimately, a claim has facial plausibility when the plaintiff pleads factual content that permits the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 663.

## III. ANALYSIS

### A. Breach of Contract

Plaintiffs raise a total of five claims. The first claim Plaintiffs raise alleges breach of contract. Plaintiffs contend they entered into a valid and binding contract with Arms in which Arms agreed to perform all work associated with constructing the earth sheltered home and bomb shelter for a total price of $364, 279.75. Plaintiffs claim Arms' breaches include demanding the additional payments for the blueprints, failing to credit the cost of the blue prints

to the construction price, demanding additional down payments well in excess of the 30% down payment agreed upon in the contract, and refusing to perform the contract for the agreed-upon price.

Arms first contends the Plaintiffs have failed to properly plead all elements to sustain a breach of contract claim as required to survive a 12(b)(6) Motion to Dismiss. (Def.'s Mot. to Dismiss, pg. 4). First, however, Arms argues that Plaintiffs failed to plead the applicable law which the Court should apply in interpreting the contract since the contract does not specify which law to use. (Def.'s Mot. to Dismiss, pg. 4-5). Therefore, it remains unclear what elements are required for Plaintiffs' claim to move forward. In Defendants' Motion, the elements for a breach of contract claim are listed for North Carolina, Florida, and Tennessee.[2] However, a complaint is not required to specify which state's law should be applied to particular claims. Federal Rule of Civil Procedure 8(a)(2) does not require a pleading to state which state's law should apply to the claim. The Rule just requires "a short and plain statement of the claim showing the pleader is entitled to relief."

Regardless of the law chosen and accepting as true all the allegations in Plaintiffs' Amended Complaint, Plaintiffs have stated claims for relief for breach of contract under North Carolina, Tennessee, or Florida Law. In North Carolina, the elements for a breach of contract claim are "(1) existence of a valid contract and (2) breach of the terms of that contract." *Colonial Trading, LLC v. Basset Furniture Indus., Inc.*, 2010 U.S. Dist. LEXIS 133401, at *8 (W.D.N.C Dec. 7, 2010) (Voorhees, J.) (quoting *Poor v. Hill*, 530 S.E.2d 838, 843 (N.C. App. 2000)). In addition, Tennessee requires a showing of "damages caused by the breach." *Burch v. Gilliam Commc'ns, Inc.*, 2005 WL 2373418 (W.D. Tenn. 2005) (quoting *Craft v. Forklift Sys., Inc.*, 2003

---

[2] Arms is a resident of Tennessee, Plaintiffs are residents of Florida, and the property is located in North Carolina.

WL 21642767, at *4 (Tenn. Ct. App. 2003). Florida also requires the Plaintiff to "perform its obligations under the contract or ha[ve] a legal excuse for its nonperformance." *APR Energy, LLC v. Pak. Power Res., LLC*, 653 F. Supp. 1127 (M.D. Fla. 2009). Plaintiffs acknowledged the existence of the contract (Pls.' Am. Compl. ¶ 8, 22, 24), and Arms acknowledged the existence of the contract (Def's. Mot. to Dismiss, p. 2). Plaintiffs also alleged breaches of the contract in their Amended Complaint. Specifically, Plaintiffs alleged that Arms demanded additional payments for blue prints (Pls.' Am. Compl. ¶ 15, 16), Arms failed to credit the cost of blue prints to the construction price, Arms demanded additional down payments well above the 30% agreed upon payment stated in the Contract, and Arms refused to perform the Contract for the price of $364, 279.74 as agreed in the contract. (Pls.' Am. Compl. ¶ 24). Plaintiffs have also shown damages in the amount of $201, 910.00 that represent the money paid to Arms, while receiving no work product from Arms. (Pls.' Am. Compl. ¶ 18, 19, 25). Finally, Plaintiffs claim they performed all that was required of them under the terms of the contract. (Pls.' Am. Compl. ¶ 23). Therefore, accepting all claims as true, Plaintiffs stated a sufficient claim for breach of contract regardless of which state's law is used.

    **B.    Breach of the Duty of Good Faith and Fair Dealing**

Plaintiffs allege Arms acted in bad faith by continually demanding additional up-front payments, while performing no work on the project. Arms' bad faith actions include demanding additional down payments well in excess of the 30% down payment agreed upon in the contract, refusing to proceed with his work until Plaintiff's paid him additional up-front money, refusing to perform the contract for the agreed upon price of $364, 279.75, and failing to return any of the Plaintiff's down payment. Plaintiffs' contend Arms' actions deprived them of the benefit of the

contract, and attempted to force Plaintiff's to pay more up-front money than they agreed to pay, and to pay a higher total price than they agreed to pay under the contract.

"In every contract there is an implied covenant of good faith and fair dealing that neither party will do anything which injures the right of the other to receive the benefits of the agreement." *Williams v. Craft Dev., LLC*, 682 S.E.2d 719, 723 (N.C. Ct. App.2009). Where the claim for breach of good faith is "part and parcel" of a similar claim for breach of an express term of the contract claim, that claim will rise and fall with the other breach of contract claim, *Lord of Shalford v. Shelley's Jewelry, Inc*., 127 F. Supp. 2d 779, 787 (W.D.N.C 2000) (quoting *Murray v. Nationwide Mut. Ins. Co*., 472 S.E.2d 358, 368 (N.C. Ct. App. 1996)), *Claggett v. Wake Forest Univ*., 486, S.E.2d 443, 447 (N.C. Ct. App. 1997) (holding the same), and only a single recovery of damages will be allowed. *Murray*, 472 S.E.2d at 368-69. Furthermore, because the covenant of good faith and fair dealing is an implied term, it cannot be used to contradict the express terms of a contract, *Rich Food Servs., Inc. v. Rich Plan Corp*., 98 F. App'x 206, 211 (4th Cir. 2004) (unpublished) (citing *Campbell v. Blount*, 210 S.E.2d 513, 515 (N.C. Ct. App. 1975)). This understanding conforms to the central purpose of the implied duty of good faith, which is to allow enforcement of a vague or incomplete agreement that the ratifying parties intended to be binding, but that lacks certain terms essential to proper contract formation. *Ultra Innovations, Inc. v. Food Lion, Inc*., 502 S.E.2d 685, 687 (N.C. Ct. App. 1998). In these cases, the duty of good faith provides the missing terms of the agreement that necessarily flow from the parties' intentions, thus allowing enforcement of the contract. *Id.*

Arms argues for the dismissal of this claim because it is again based on Plaintiffs' breach of contract claim, specifically Plaintiffs' assertion that the breach arose from Arms requesting additional payments. (Def.'s Mot. to Dismiss, pg. 7-8). Since, Plaintiffs' allegations of breach of

the duty of good faith and fair dealing center on alleged breaches of express contract terms, these claims rise and fall with the underlying claims for breach of contract. Therefore, Plaintiffs' allegations are duplicative of Plaintiffs' allegations of breach of contract elsewhere in the complaint and will be dismissed as a freestanding claim for relief. Plaintiffs are still entitled to assert theories of breach of good faith in support of its claims for breach of contract. *Performance Sales & Mktg., LLC v. Lowe's Cos.*, 2010 U.S. Dist. LEXIS 55426, at *11 (W.D.N.C. June 4, 2010).

### C. Unfair and Deceptive Trade Practices

Plaintiffs next allege Arms' actions violate the North Carolina Unfair and Deceptive Trade Practices Act (the "UDTPA"), N.C. GEN. STAT. § 75-1.1 (2012). Plaintiffs paid Arms $200, 000.00 up-front because Arms promised to move Plaintiffs' project to "the front of the line." Arms then refused to start construction until he received the additional up-front payments he demanded. Plaintiffs allege that the specific unfair and oppressive actions that contributed to Arms' plan are demanding additional payments for blue prints, failing to credit the cost of the blue prints to the construction price, demanding additional payments in excess of the 30% down payment agreed upon in the contract, refusing to proceed with work until the Plaintiff's paid him the additional money, and failing to return any of the Plaintiffs' down payment.

Unfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce, are unlawful in North Carolina. N.C. GEN. STAT. § 75-1.1 (2012). There are two ways in which a defendant can prove or prevail on an UDTPA claim: (1) make the UDTPA claim standing separate and apart from a breach of contract claim, or (2) make the UPTPA claim based upon a breach of contract accompanied by "[s]ubstantial aggravating

8

circumstances." *Suntrust Bank v. Bryant/Stutphin Props.*, 732 S.E.2d 594, 599 (N.C. Ct. App. 2012).

If making the claim separate from a breach of contract claim, Plaintiffs would need to establish a prima facie case of unfair trade practices. To do so, Plaintiffs must allege "(1) the defendant committed an unfair or deceptive act or practice, (2) the action in question was in or affecting commerce, and (3) the act proximately caused injury to the plaintiff." *Metropolitan Group, Inc. v. Meridian Indus., Inc.*, 2010 U.S. Dist. LEXIS 128795, at *17 (W.D.N.C. Dec. 6, 20120) (Voorhees, J.) (quoting *Compton v. Kirby*, 577 S.E.2d 905, 917 (N.C. Ct. App. 2003). "A trade practice is 'unfair' if it is 'immoral, unethical, oppressive, unscrupulous, or substantially injurious to customers.'" *Id.* (quoting *Marshall v. Miller*, 276 S.E.2d 397, 403 (N.C. 1981)). To prevail on an UDTPA claim, a plaintiff need not show fraud, bad faith, or actual deception. Instead, it is sufficient if a plaintiff shows that a defendant's acts possessed the tendency or capacity to mislead or created the likelihood of deception. *RD & J Properties v. Lauralea-Dilton Enterprises, LLC*, 165 N.C.App. 737, 748 (N.C. Ct. App. 2004) (quoting *Chastain v. Wall*, 78 N.C.App. 350, 356, 337 S.E.2d 150, 153 (1985).

Arms argues the claim fails because Plaintiffs have not pled or identified any substantial aggravating factors that would rise to the level necessary for such a claim. (Def.'s Mot. to Dismiss, pg. 8). Next, Arms argues the contract foresaw and provided for situations where changes to the contract price would occur, and requesting adherence to these terms would not constitute an UDTPA claim. (Def.'s Mot. to Dismiss, pg. 9). Therefore, Arms alleges Plaintiffs have not stated a plausible UDTPA claim. (Def.'s Mot. to Dismiss, pg. 9).

In response, Plaintiffs argue their Complaint alleges that Arms held their $200,000 down payment and their project hostage while he demanded more up-front money (Pls.' Am. Compl. ¶

9

34-35), which is aggravating and unfair. North Carolina law does not exactly define what qualifies as a "substantially aggravating circumstance," but Plaintiffs' use of *Performance Sales & Mktg., LLC v. Lowe's Cos.*, provides a sufficient precedent to allow the UDTPA claim to remain at this stage of the pleadings. 2010 U.S. Dist. LEXIS 55426, at *42-*43 (W.D.N.C. June 4, 2010). *Performance Sales & Mktg., LLC v. Lowe's Cos.*, held that defendant's use of superior bargaining power to coerce plaintiff is sufficient to state an UDTPA claim. If defendant did use its superior bargaining power unfairly and coercively, then these behaviors might fairly be categorized as "unethical, unscrupulous, or oppressive" and may support a claim for UDTPA. *Id.* As alleged, Arms' actions are considered unethical, unscrupulous, and oppressive in regards to Plaintiffs' claims that Arms extracted as much up-front money as possible without performing any work, and refused to perform any work until the extra money was received. In addition, Plaintiffs sufficiently alleged Arms' promise to move their project to "the front of the line" in exchange for a deposit well above the required 30% of the total misled them because again no construction was ever started. Therefore, Plaintiffs have stated a valid UDTPA claim.

   **D. Unjust Enrichment – in the Alternative**

Plaintiffs next contend Arms benefitted in the amount of $201, 910.00 from Plaintiffs' payments. In exchange for this benefit, Plaintiffs contend Arms failed to perform any services or provide any products. Plaintiffs allege Arms' reliance on the final paragraph of page three of contract is void as a liquidated damages clause because the amount is unreasonable. Paragraph three of the contract states, "Should the Owners desire to void this contract 10% {10} percent of the down payment will be refunded." (Doc. 6-2, Exh. B). Plaintiffs then go on to assert that even if this paragraph were enforceable, it would only apply to a deposit of 30% of the contract price, and not to the entirety of the down payment.

Evidently Arms drafted the written contract. It should be noted that to the extent its terms are ambiguous, they may be construed against the drafter.

Arms then argues that Plaintiffs did receive a benefit in that Earthlog agreed to build an earth-shelter home and a bomb shelter on the property of the Plaintiffs, that Earthlog produced floor plans, and provided consulting services prior to contract formation. (Def.'s Mot. to Dismiss, pg. 12). In addition Arms asserts Plaintiffs' denial of any benefit fails to consider the deposits paid by Earthlog for materials for the project, costs of preparing a project for construction, and lost profit from this job. (Def.'s Mot. to Dismiss, pg. 12). Arms then goes on to argue that equitable principles are not applicable in this case because the agreed-upon contract provides an adequate remedy at law. (Def.'s Mot. to Dismiss, pg. 13). Lastly, Arms alleges Plaintiffs' claim regarding the final paragraph of page three of the contract fails because Plaintiffs do not demonstrate any support for their assertion that this term is void and unenforceable. (Def.'s Mot. to Dismiss, pg, 14).

Plaintiffs then respond that complaints can assert claims in the alternative, including unjust enrichment claims. (Pls.' Resp., pg. 16). *Performance Sales*, 2010 U.S. Dist. LEXIS 55426, at *13-*14 (holding that at a motion to dismiss stage, a plaintiff can assert an alternative claim for unjust enrichment). Moreover, regarding the final paragraph of page three of the contract, Plaintiffs respond that a clause that would allow Arms to keep a $200, 000.00 deposit when no work has been performed is an unreasonable penalty. *Brickwood Contractors, Inc., v. City of Durham*, 1998 U.S. Dist. LEXIS 17339, at *29-*39 (M.D.N.C. Aug. 18, 1998) (holding that liquidated damages clause was unenforceable as a penalty because it was neither a reasonable estimate of probable damages nor proportionate to actual damages incurred).

Arms then replies "the doctrine of unjust enrichment is based on 'quasi-contract' or contract 'implied in law' and thus will not apply here where a contract exists between two parties.'" *Delta Envtl. Consultants, Inc. v. Wysong & Miles Co.*, 132 N.C. App. 160, 165 (1999). Where a contract exists between the parties, an action for breach of contract, rather than unjust enrichment, is the proper cause of action. *Delta* at 165. Therefore, Arms argues since both parties agree there is an enforceable contract, the unjust enrichment claim should be dismissed. (Def.'s Reply to Pls.' Resp., pg. 10). Moreover, Arms contends that because Plaintiffs merely stated that the liquidated damages are "unreasonable and act as a penalty" without showing how the clause is unreasonable, the claim is insufficient to survive a Motion to Dismiss. (Def.'s Reply to Pls.' Resp., pg. 11).

"The doctrine of unjust enrichment was devised by equity to exact the return of, or payment for, benefits received under circumstances where it would be unfair for the recipient to retain them without the contributor being repaid or compensated. To invoke the unjust enrichment doctrine, however, more must be shown than that one party voluntarily benefited another or his property." *Collins v. Davis*, 68 N.C. App. 588, 591, 315 S.E.2d 759, 761 91984 (quoted in *Homeq v. Watkins*, 154 N.C. App. 731, 572 S.E.2d 871, 873 (2002)). In order to state a claim for unjust enrichment, the plaintiff's allegations must set forth that a benefit was conferred on the defendant, the defendant accepted the benefit, and that the benefit was not gratuitous. *Booe v. Shadrick*, 322 N.C. 567, 570, 369 S.E.2d 554, 556 (1988). Here, the Complaint alleges Plaintiffs paid Arms $200, 000.00, substantially more than the required 30% down payment, to ensure their project was moved to "the front of the line." (Pls.' Am. Compl., ¶ 7). Plaintiffs contend they did not confer this benefit gratuitously, and Arms accepted the benefit. (Pls.' Am. Compl. ¶ 39). Since it would be unjust for Arms to keep the down payment without

performing any services or providing any products to Plaintiffs (Pls.' Am. Compl., ¶ 40), the Court finds that Plaintiffs' Complaint is sufficient to state a claim for unjust enrichment at this stage of the proceedings. In addition, since the Court must make a decision regarding the meaning of the final paragraph of page three of contract, in regards to its enforceability, this claim is again sufficient at this stage of the proceedings.

The assertion that all parties agree to the existence of a written contract does not settle the question of what its terms are or indeed what parties may be bound by it. Thus the fall back claim of unjust enrichment should survive this order, allowing discovery or trial evidence to come to bear, and permitting the Court or a jury to resolve ambiguities which now stand in the way of an early decision by way of the instant motion.

### E. Piercing the Corporate Veil – in the Alternative

Lastly, Plaintiff contends Earthlog's corporate veil should be pierced to the extent that Arms was acting on behalf of Earthlog before Earthlog became incorporated. Plaintiffs claim they were led to believe that Earthlog was a legitimate corporation that would perform the project, when it was actually an instrumentality used by Arms. Plaintiffs' believe Arms was the sole owner and shareholder of Earthlog, and is the only person involved in the business affairs, finances, and policies of Earthlog. Plaintiffs have never seen any evidence of any other employee or representative of Earthlog aside from Arms. Therefore, Plaintiffs argue Arms should not be permitted to use Earthlog to shield his personal assets from being used to satisfy a judgment, and that Earthlog's present corporate status should be disregarded.

Arms contends that because Earthlog is incorporated in Tennessee, to survive a Rule 12(b)(6) Motion to Dismiss claim under Tennessee law, the "court must be convinced that the separate entity 'is a sham or a dummy' or that disregarding the separate corporate entity is

'necessary to accomplish justice.'" *CAO Holdings, Inc. v. Trost,* 333 S.W.3d 73, 88 (Tenn. 2010). *Oceanics School, Inc. v. Barbour*, 112 S.W.3d at 140. *Schlater v. Haynie*, 833 S.W.2d 919, 925 (Tenn. Ct. App. 1991)). Arms then continues on to name eleven factors Tennessee courts identified in considering whether or not to disregard the corporate veil. *FDIC v. Allen*, 584 F. Supp. at 397 (quoted in *CAO Holdings, Inc. v. Trost*, 333 S.W.3d 73, 88n. 13 (Tenn. 2010). Arms states it is necessary for the factors to favor the party requesting the court to disregard the corporate status. *Oceanics School*, 112 S.W.3d at 140-141. Arms also asserts Plaintiffs failure to outline any support for their claim that Arms exercises complete domination of the corporation, and that there are insufficient facts in the Amended Complaint to state a claim to relief that is plausible on its face.

Plaintiffs then respond that again the choice of Tennessee or North Carolina law on this issue does not matter for this motion because the Complaint states a claim under the law of both states. According to *Dassault Falcon Jet Corp.*, the North Carolina Supreme court would most likely apply the law of the state of incorporation to a piercing of the corporate veil claim, but there is still no binding North Carolina law on this issue. *Dassault Falcon Jet Corp., v. Oberflex, Inc.*, 909 F. Supp. 345, 348 (M.D.N.C. 1995). Tennessee courts have held a corporations' veil may be pierced where the corporate entity is a "sham or dummy" or where disregarding the corporate entity is "necessary to accomplish justice." *CAO Holdings, Inc.*, 333 S.W.3d at 88. Plaintiffs then also assert that Tennessee courts consider the factors set out in *FDIC v. Allen* to determine whether piercing the corporate veil is appropriate. However, the Tennessee Supreme Court held that "[i]ssues relating to the piercing of the corporate veil are not ordinarily appropriate for resolution by summary judgment." *CAO Holdings*, 333 S.W.3d at 89. Therefore,

where a Plaintiff has stated a claim for piercing the corporate veil, consideration of these issues is also inappropriate at the motion to dismiss stage.

Plaintiffs then assert that North Carolina law is not materially different. North Carolina courts "will disregard the corporate form and pierce the corporate veil where an individual exercises actual control over a corporation, operating it as a mere instrumentality or tool." *Becker v. Graber Builders, Inc.*, 561 S.E.2d 905, 908 (N.C. Ct. App. 2002). Liability may be imposed on an individual controlling a corporation as an instrumentality when it is shown (1) that the individual had control or domination of the finances, policy, and business with respect to the attacked transaction so that the corporation does not have an existence of its own, (2) that such control was used to commit a wrong or an unjust act in contravention of plaintiff's legal rights, and (3) that such control and breach of duty proximately caused harm to the plaintiff. *Id.* (citing *Glenn v. Wagner*, 329 S.E.2d 326, 330 (N.C. 1985).

Plaintiffs allege that Earthlog was a sham corporation and that piercing Earthlog's corporate veil is necessary to accomplish justice to the extent Arms attempts to shield his personal assets from liability. (Pls.' Am. Compl. ¶ 45-47). Arms refuses to return Plaintiffs' their down payment money and Plaintiffs' Complaint pleads facts relevant to both state's laws. (Pls.' Am. Compl. ¶ 44-47). At this stage of the proceedings, Plaintiffs have provided support for their allegation that Earthlog is an instrumentality of Arms. Moreover, "piercing the corporate veil depends upon facts that Plaintiffs must obtain through discovery." *Bear Hollow*, 2006 U.S. Dist. LEXIS 36780, at *50-*51.[3] Based on Plaintiffs' Complaint, Plaintiffs have sufficiently alleged facts to sustain their claim for piercing of the corporate veil. Since a piercing of the corporate

---

[3] Of course, the discussion of piercing the corporate veil may be moot based on the fact that Earthlog did not yet exist or have the power to contract as of the time the written contract was signed. That would potentially leave only Arms as an individual doing business as Earthlog, a de facto proprietorship, as the party to be charged, exposing assets of Arms individually to collection efforts.

veil claim depends on facts that Plaintiffs must obtain through discovery, Defendants' Motion to Dismiss is denied.

## IV. CONCLUSION

**IT IS, THEREFORE ORDERED** that Defendants' Motion to Dismiss is hereby **GRANTED** in part and **DENIED** in part.

Signed: July 1, 2013

Richard L. Voorhees
United States District Judge